IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYRONE W. CLARK, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>GERALD ROZUM, et al.,, )<br>)<br>Respondents. )<br>)<br>) | Civil Action No. 08-762<br><br>District Judge Nora Barry Fischer<br>Magistrate Judge Lisa Pupo Lenihan |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.    REPORT**

Petitioner, Tyrone W. Clark, a state prisoner incarcerated at the State Correctional Institution at Somerset, Pennsylvania, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence in the Court of Common Pleas of Beaver County for two counts each of aggravated assault, simple assault and terroristic threats. For the reasons that follow, the Petition should be denied.

### A. Relevant Factual History

The Superior Court summarized the facts in this case as follows.

> *** [T]he evidence established that on the 28th day of September, 2002, Appellant and Catherine Archer were living together at 604 Melrose Avenue, Beaver County, Pennsylvania. Shortly before 10:30 p.m., Archer and Appellant were standing next to a van parked in the driveway. The two became embroiled in an argument over Appellant telling Archer that he still had feelings for

his ex-wife. This was followed by Appellant placing Archer in a headlock, sticking a handgun in her mouth, and threatening to kill her. Eventually Appellant removed the handgun from Archer's mouth, but then he dragged her to the side of the house. While Archer was hollering for help, Appellant pushed her against the house and she fell. Once Archer got up, Appellant pushed her with such force that she fell a second time. Appellant persisted in this conduct, which caused Archer to fall a third time, and after each fall Archer fell to her knees and sustained abrasions thereto. When Archer broke free of Appellant, she ran to a neighbor's house to call "911." She gave the operator her name, address, and the Appellant had placed a gun in her mouth. Within minutes, the police arrived on the scene, and Archer recounted what occurred. Archer also told police where they could find Appellant's guns (a black Rossi .32 caliber revolver; 380 nine-millimeter stainless steel AMT semi-automatic pistol, both of which were on Appellant's person during the assault). Then, Appellant was charged with the offenses cited above.

Doc. No. 31-1, pp. 3-4.

On June 19, 2003, after a jury trial, Petitioner was found guilty of two counts of aggravated assault pursuant to 18 Pa. Cons. Stat. §2702 (a)(1), two counts of simple assault pursuant to 18 Pa. Cons. Stat. §2701(a)(1) and two counts of terroristic threats pursuant to 18 Pa. Cons. Stat. §2706. He was sentenced on July 31, 2003, to a term of imprisonment of from ten (10) to twenty (20) years for aggravated assault as a felony of the first degree under 18 Pa. Cons. Stat. 2702(a)(1). Petitioner filed a timely direct appeal to the Superior Court of Pennsylvania, which was discontinued on or about December 15, 2003, on the ground that Petitioner intended to raise allegations of ineffective assistance of his trial counsel. Thereafter Petitioner filed a *pro se* petition under the Post Conviction Relief Act, 42 Pa. Cons. Stat. §9541 *et seq.*, which was amended by new counsel on or about May 16, 2006. In his PCRA petition Petitioner raised the following issues.

> 1. Ineffective assistance of counsel for failing to file a pre-trial motion to suppress the seizure of two firearms from the yard of Petitioner's residence.

2

2. Ineffective assistance of counsel for failing to request a proper jury charge as to Petitioner's failure to testify, motive, impeachment of witnesses, and impeachment of substantive evidence against witness by inconsistent statement.

3. Ineffective assistance of counsel for failing to raise insufficiency of the evidence.

On July 11, 2006, an evidentiary hearing was held and on July 31, 2006, the court denied the PCRA Petition (doc. no. 31-2). Petitioner filed a timely appeal and on September 7, 2007, the Superior Court of Pennsylvania affirmed the order denying Petitioner's PCRA petition (doc. no. 31-1). Petitioner filed a petition for allowance of appeal, which was denied by the Supreme Court of Pennsylvania on April 10, 2008 (doc. no. 17-2).

On February 10, 2009, Petitioner filed his petition for writ of habeas corpus in this Court raising the following issues.

1. Trial counsel was ineffective for failing to raise the issue that the alleged victim pleaded the 5th at the preliminary hearing. Also, appellate counsel did not introduce that the alleged victim had signed a sworn affidavit that she had lied to authorities.

2. Ineffective assistance of trial counsel for failing to file a motion to suppress the warrantless seizure of two firearms.

3. The sentence was illegally imposed and did not fit the crime.

### B. Standards Governing Federal Habeas Corpus Review

1. <u>Exhaustion Requirement</u>

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state

*habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). The petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall <u>not</u> be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c).

An application for a writ of habeas corpus may be denied on the merits, however, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(2).

2. <u>Procedural Default Doctrine</u>

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 678 (3d Cir. 1996). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state

law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman v. Thompson, 501 U.S. at 750.

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. *Id*.; Sistrunk, 96 F.3d at 673. Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996); Carter, 62 F.3d at 595. However, the procedural default doctrine only applies when a state procedural rule is consistently or regularly applied. Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Johnson v. Mississippi, 486 U.S. 578, 588-89 (1988)).[1] A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750; Carter, 62 F.3d at 595.

Finally, the United States Court of Appeals for the Third Circuit has instructed that a petition containing exhausted and unexhausted but procedurally barred claims is not a mixed petition

---

1. *See also* Doctor, 96 F.3d at 675 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

5

requiring dismissal under Rose v. Lundy, 455 U.S. 509 (1982). *See* Wenger v. Frank, 266 F.3d 218, 227 (3d Cir. 2001). Instead, the Court of Appeals held that the district court should review the merits of the exhausted claims but must not decide the merits of the claims that are barred under the procedural default doctrine. *Id*.

3. Standard of Review for Exhausted (but not Procedurally Defaulted) Claims

In describing the role of federal habeas proceedings, the Supreme Court of the United States, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir.2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Few state court decisions will be "contrary to" Supreme Court precedent. "Clearly established Federal law" should be determined as of the date of the relevant state-court decision. Greene v. Palakovich, Civil No. 07-2163, 2010 WL 2134575 (3d Cir. May 28, 2010).

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular … case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Id. (quoting Williams, 529 U.S. at 407).

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions. In Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855 (May 3, 2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus

to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial. The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion. The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law." § 2254(d)(1).

Lett, 130 S.Ct. at 1862. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision - or, for that matter, the trial judge's declaration of a mistrial - was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, People v. Lett, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event - for the reasons we have explained - **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

*Id*. at 1865, n. 3 (emphasis added).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with

the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." Campbell v. Vaughn, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)). Where the state court fails to adjudicate or address the merits of a petitioner's claims, unless procedurally defaulted, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact. Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

### C. Failing to Raise Issue that Victim Pleaded the 5th

Petitioner's first claim is that trial counsel was ineffective for failing to raise the issue that the alleged victim pleaded the 5th at the preliminary hearing and that appellate counsel did not introduce that the alleged victim had signed a sworn affidavit that she had lied to authorities. Petitioner did not raise this claim in his direct appeal; nor did he raise this claim in his PCRA proceeding. The following discussion reveals that Petitioner has procedurally defaulted this claim by failing to properly present it to the Pennsylvania courts in accordance with applicable Pennsylvania law.

In this respect, in order to comply with the exhaustion requirement in 28 U.S.C. § 2254, Petitioner was required to present all of his federal habeas claims to the Pennsylvania courts in his direct appeal or in his PCRA proceeding. Because he failed to do so, this Court must determine whether Petitioner has any other available state court remedy through which he can present his unexhausted claims to the Pennsylvania courts. Under Pennsylvania law, the exclusive remedy to challenge a conviction following direct appeal is through a PCRA proceeding brought in accordance

with the Post Conviction Relief Act. *See* 42 Pa. Cons. Stat. § 9542. Under the PCRA, a petitioner may bring a second PCRA petition only as provided for in the PCRA, as set forth below.

> (b) Time for filing petition.--
>
>> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>>
>>> (I) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>>>
>>> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>>>
>>> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.
>>
>> (2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.
>>
>> (3) For purposes of this subchapter, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review.
>>
>> (4) For purposes of this subchapter, "government officials" shall not include defense counsel, whether appointed or retained.

42 Pa. Cons. Stat. § 9545(b). The Supreme Court of Pennsylvania has held that the PCRA's timeliness requirements are mandatory and jurisdictional in nature; thus, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is

filed in an untimely manner. *See, e.g.*, Commonwealth v. Murray, 562 Pa. 1, 5, 753 A.2d 201, 202-203 (2000); Commonwealth v. Fahy, 558 Pa. 313, 328-29, 737 A.2d 214, 222 (1999); Commonwealth v. Peterkin, 554 Pa. 547, 722 A.2d 638, 641 (1998).

Under Pennsylvania law, the only potential state remedy that Petitioner may pursue to raise his unexhausted claim is a second PCRA petition. In order for him to be able to file a second PCRA now, he must allege facts that show that: 1) the failure to raise the claim previously was the result of interference by government officials; 2) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or 3) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively. 42 Pa. Cons. Stat. § 9545(b)(1). Petitioner's habeas petition does not allege any of the three exceptions listed above. Consequently, he is precluded from presenting his unexhausted claim in a second PCRA petition based on the time limitations set forth in the PCRA. These time limitations are an independent and adequate state law ground sufficient to invoke the procedural default doctrine for purposes of federal court review. *See* Lines v. Larkin, 208 F.3d 153, 165 (3d Cir. 2000).

As stated previously, this federal court may not review Petitioner's defaulted claim unless he demonstrates cause and prejudice for his default or establishes a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. at 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate that the error worked to his

11

actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494.

In order to establish prejudice to excuse a procedural default, a petitioner has to convince the federal court that there is a "reasonable probability," not a mere possibility, that the result of the trial would have been different if the evidence at issue had been disclosed to the jury. Strickler v. Greene, 527 U.S. 263, 289 (1999). " 'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' " Id. at 289-90 (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). In other words, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Id. at 290 (internal quotation omitted). It is the defendant's burden to establish a reasonable probability of a different result. Id. at 291 (emphasis deleted). Employing the prejudice test set forth above, it is clear that the Petitioner has failed to establish the prejudice required to overcome his procedural default for failing to raise his first claim in timely manner.

Finally, Petitioner also has not demonstrated that a fundamental miscarriage of justice will result from the failure of this Court to review his claim. In Schlup v. Delo, 513 U.S. 298 (1995), the Supreme Court explained the narrow class of cases implicating a fundamental miscarriage of justice. Specifically, the Court defined the miscarriage of justice exception by holding that a habeas petitioner is required to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 327 (quoting Murray v. Carrier, 477 U.S. at 496). The Court instructed that "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Id.* at 324. The Court further explained that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. The petitioner thus is required to make a stronger showing than that needed to establish prejudice." *Id.* at 327.

The federal courts, including the Court of Appeals for the Third Circuit, are in agreement that, in order to show a fundamental miscarriage of justice under the Schlup standard, a petitioner must offer new reliable evidence in support of his claim of factual innocence. *See, e.g.*, Keller v. Larkins, 251 F.3d 408, 415-16 (3d Cir. 2001) ("To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime by presenting new evidence of innocence.") (citations omitted); Bannister v. Delo, 100 F.3d 610, 624 (8th Cir. 1996), *cert. denied*, 521 U.S. 1126 (1997); Holloway v. Jones, 166 F.Supp.2d 1185 (E.D. Mich. 2001); Alexander v. Keane, 991 F.Supp. 329 (S.D.N.Y. 1998). Petitioner has failed to meet his burden in this regard. Consequently, he is not entitled to habeas corpus relief with respect to his first claim.

### D. Failure to File Motion to Suppress

Petitioner's second claim is that his trial counsel rendered ineffective assistance by failing to file a motion to suppress the warrantless seizure of two firearms.[2] The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective

---

2. In this regard, the Fourth Amendment of the United States Constitution assures people the right to be secure in their persons, houses, papers, and effects by protecting against "unreasonable" searches and seizures. In order to effectuate the rights secured by the Fourth Amendment, the judiciary created the "exclusionary rule" as a means to deter the frequency of Fourth Amendment violations. Under the exclusionary rule, the government is barred from using physical evidence that it obtained through an illegal search or seizure as substantive evidence of guilt in its case-in-chief. *See* United States v. Leon, 468 U.S. 897, 906 (1984); United States v. Havens, 446 U.S. 620, 628 (1980).

assistance: 1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984)). To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Strickland, 466 U.S. at 690. A petitioner who claims that he or she was denied effective assistance of counsel carries the burden of proof. United States v. Cronic, 466 U.S. 648, 658 (1984).

The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 689. The question is not whether the defense was free from errors of judgement, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. *Id.*

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694 (emphasis added). A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. *Id.*

In Kimmelman v. Morrison, 477 U.S. 365 (1986), the Court determined that a habeas petitioner could raise a claim of ineffective assistance when his trial counsel failed to file a timely pre-trial motion to suppress evidence allegedly obtained in violation of the Fourth Amendment. Notwithstanding, the Court instructed that the mere failure to file a timely suppression motion does not constitute *per se* ineffective representation. Kimmelman, 477 U.S. at 383. To demonstrate actual prejudice under the second prong of the Strickland test, a petitioner must prove that the Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. Kimmelman, 477 U.S. at 375.

In its review of this claim, the Superior Court held as follows.

> Next, we shall respond to Appellant's complaint that trial counsel was ineffective for failing to file a motion to suppress the warrantless seizure of his two handguns, which were recovered under a cinder block located in the rear yard by police at the direction of the victim.
>
> The United States Supreme Court has stated the following about the warrantless entry of a home, which we interpret to apply to the curtilage thereto: "The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990).
>
> Herein, it was the victim who informed the police of the whereabouts of the guns in Appellant's possession during the assault. The victim testified that she and Appellant were living together at 604 Melrose Avenue as boyfriend and girlfriend. This information was conveyed by the victim to the "911" operator, the attending nurse at the hospital, and Officer Moravec. The victim also told Officer Moravec that the guns were hidden at 604 Melrose Avenue - two to be specific, and she even knew where Appellant kept them. More specifically, the victim stated to police that Appellant kept his guns by the fence in the backyard at 604 Melrose Avenue. When the

> police found the guns, neither one was loaded but both guns were likely operable.
>
> Given the preceding scenario, where joint access or control existed over the dwelling and curtilage, Appellant had no reasonable or legitimate expectation of privacy to preclude the victim (a third party having joint access or control) from permitting the inspection in her own right to the rear yard at 604 Melrose Avenue to retrieve the handguns possessed by Appellant during the assault. *See* United States v. Mattock, 415 U.S. 164, 168 (1974) (The law is settled that a warrantless search may be made with the voluntary consent of a third party who possess common authority over or other sufficient relationship to the premises or effects sought to be inspected.); Commonwealth v. Lowery, 451 A.2d 245, 248 (Pa. Super. 1982) (semble). Such reasoning renders meritless Appellant's claim that trial counsel was ineffective for failing to litigate a motion to suppress the evidence obtained from an allegedly illegal search and seizure.

Doc. No. 31-1, pp. 11-13 (some internal citations omitted).

Thus, the Superior Court determined that, in accordance with Supreme Court law, a suppression motion would have been denied and therefore, counsel could not be deemed ineffective for failing to pursue such a motion. Petitioner has not shown that the Superior Court's decision was an unreasonable application of clearly established Federal law as determined by the Supreme Court. Consequently, Petitioner is not entitled to relief as to this claim.

### E. Sentencing Claim

In his third claim, Petitioner asserts that his sentence is illegal and does not fit the crime. Petitioner is not entitled to habeas corpus relief with respect to this claim as he has failed to allege the denial of any federal constitutional right. In this regard, a state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the Constitution or federal law. Smith v. Phillips, 455 U.S. 209 (1982); Geschwendt v. Ryan, 967 F.2d 877 (3d Cir.), *cert. denied*, 506 U.S. 977 (1992); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991).

Thus, a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Engle v. Isaac, 456 U.S. 107, 119 (1982).

Generally, sentencing is a matter of state criminal procedure and does not fall within the purview of federal habeas corpus. Wooten v. Bomar, 361 U.S. 888 (1959). It necessarily follows that a criminal sentence cannot be attacked in a habeas corpus proceeding unless the sentencing court lacked jurisdiction to impose it or committed a constitutional error that made the sentence or underlying conviction fundamentally unfair. United States v. Addonizio, 442 U.S. 178, 186 (1979); Gleason v. Welborn, 42 F.3d 1107 (7th Cir. 1994), *cert. denied*, 514 U.S. 1109 (1995); Bean v. United States, 679 F.2d 683 (7th Cir. 1982). Thus, a federal court will not normally review a state sentencing determination that falls within the statutory limit, Williams v. Duckworth, 738 F.2d 828, 831 (7th Cir. 1984), as the severity of a sentence alone does not provide a basis for habeas relief. Smith v. Wainwright, 664 F.2d 1194 (11th Cir. 1981) (sentence within statutory limits can not be attacked in habeas proceeding); United States v. Myers, 374 F.2d 707 (3d Cir. 1967).

Petitioner's sentence is within the permissible statutory limits under Pennsylvania law. Moreover, it is not grossly disproportionate or extreme. *See, e.g.*, Commonwealth v. Houck, 596 Pa. 683, 689, 948 A.2d 780, 784 (Pa. 2008) (sentence of 10 to 20 years of imprisonment for aggravated assault); Commonwealth v. Broaden, 980 A.2d 124 (Pa. Super. 2009) (10 to 20 years incarceration for two counts of aggravated assault); Commonwealth v. Lawrence, 960 A.2d 473 (Pa. Super. 2008) (sentence of 10 to 20 years on aggravated assault).

### F. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

### III. **CONCLUSION**

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections may constitute a waiver of that party's appellate rights.

                                                Lisa Pupo Lenihan
                                                United States Magistrate Judge

Dated: July 14, 2010

cc:    Tyrone W. Clark
        CA-8091
        SCI Somerset
        1600 Walters Mill Road
        Somerset, PA 15510